# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2184 | **DATE** | 11/24/2003 |
| **CASE TITLE** | USA ex rel. Neftaly Rodriguez vs. Jerry Sternes, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Rodriquez's petition for writ of habeas corpus is GRANTED. Petitioner Neftaly Rodriquez shall be released from custody on the conviction challenged in this action unless the State of Illinois commences proceedings to afford Rodriquez a new trial within one hundred and twenty days (120) of the date of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 25 2003 | |
| ✓ | Docketing to mail notices. | | | 18 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT  FILED
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
NOV 2 4 2003
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. NEFTALY RODRIGUEZ, | |
| Plaintiff, | Case No. 02 C 2184 |
| v. | Hon. Harry D. Leinenweber |
| JERRY STERNES, Warden, | |
| Defendant. | |

NOV 2 5 2003

## MEMORANDUM OPINION AND ORDER

Neftaly Rodriguez (hereinafter "Rodriguez") is incarcerated at Dixon Correctional Center, serving a twenty-nine-year sentence for first degree murder. After an unsuccessful direct appeal, Rodriguez filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, asserting that the state trial court violated his Sixth Amendment right to counsel of choice by disqualifying one of his attorneys for a potential conflict of interest. For the following reasons, the petition is granted.

### I. BACKGROUND

Along with Robert Munoz and Angel Rosado (hereinafter "Rosado"), Rodriguez was indicted for murder in the shooting death of Dennis Rodriguez. Petitioner Rodriguez was initially represented by two attorneys from separate firms, Perry Grimaldi and Joseph Brent (hereinafter "Brent"). Brent contemporaneously represented Chicago police detective John McMurray (hereinafter

18

"McMurray"), who took part in the investigation of the crime, in an unrelated real estate transaction. Citing this as a conflict of interest, prior to trial the State moved to have Brent removed from the case.

McMurray was not an arresting officer for any of the co-defendants and had no contact with Petitioner Rodriguez. As a reporting officer, however, McMurray did have contact with Rodriguez's co-defendant Rosado. Along with other detectives, McMurray played a role in verifying Rosado's initial excuse and interviewed Rosado to inform him that the excuse had not been substantiated. He also questioned "Nana" and "Demaris," two women whom Rosado subsequently claimed as additional alibis. When these women refuted Rosado's story, McMurray again met with Rosado, who eventually made an incriminating statement and implicated Rodriguez in the crime.

In an initial hearing before the trial judge, Judge Porter, the State asserted that McMurray had become an "integral" part of the case, and that he would likely testify at trial. In response, Brent noted that McMurray was not on the State's answer to discovery as a potential witness and that the State had acknowledged that its discovery was complete. Brent also explained that Rodriguez was willing to waive any conflict or, in the alternative, to have co-counsel Grimaldi cross-examine McMurray. In support of its motion, the State informed Judge Porter that it planned to add McMurray to the witness list.

In order to avoid reading the police reports in the case, Judge Porter transferred the case to Judge Karnezis for the limited purpose of ruling on the State's motion to compel Brent's withdrawal. After reading the police reports but without hearing any arguments from the parties, Judge Karnezis granted the motion to disqualify Brent. In his ruling, Judge Karnezis cited the State's assertion that McMurray would testify, as well as the State's interest in having a fair trial, the avoidance of possible impropriety, and the elimination of any possible conflict or later claim of ineffective assistance of counsel were the court to accept Rodriguez's waiver of conflict.

With no opposition from the State, Rodriguez subsequently moved to sever his case and was tried by Judge Porter in a simultaneous, severed bench trial with Rosado. The State did not call any of the witnesses McMurray interviewed to testify against either Rodriguez or Rosado. Nor did McMurray himself testify in either case. On February 4, 1999, Judge Porter convicted Rodriguez and on March 11, 1999, sentenced him to twenty-nine years imprisonment. Rodriguez appealed his conviction to the Illinois Court of Appeals claiming that: (1) the trial court improperly disqualified his counsel; and (2) he was arrested without probable cause.

In an unpublished opinion, the Illinois appellate court affirmed the decision of the trial court on both claims. *People v. Rodriguez*, No. 1-99-1422 (Ill. App. Ct. Dec. 5, 2000). With

respect to Rodriguez's first claim, the claim before this Court, the appellate court found that the trial court did not abuse its discretion in ordering Brent to withdraw. Citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), the appellate court explained that the presumption in favor of Rodriguez's counsel of choice could be overcome by either a demonstration of actual conflict or by a showing of a serious potential for conflict. The court explained that because McMurray had interviewed witnesses and co-defendants who implicated Rodriguez in the murder, McMurray was a possible witness against Rodriguez. It found that the trial court had considered the appearance of impropriety, and the probability that Rodriguez could have raised an ineffective assistance of counsel claim based on the conflict of interest on appeal if the court had accepted Rodriguez's waiver of conflict and if Rodriguez had been convicted.

Rodriguez filed a petition for rehearing on December 26, 2000, which was denied by the appellate court on February 2, 2001. He then filed a petition for leave to appeal with the Supreme Court of Illinois, which was denied on June 6, 2001. On March 26, 2002, Rodriguez timely filed the instant petition for writ of habeas corpus. In his petition, Rodriguez claims that the trial judge violated his Sixth and Fourteenth Amendment rights to counsel of choice when he disqualified his attorney based on a potential conflict of interest.

## II. **DISCUSSION**

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held in prison pursuant to a state court judgment obtained in violation of rights guaranteed by the United States Constitution. 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 375 (2000). A federal court may not grant a writ of habeas corpus for any claim that was adjudicated on the merits in state court proceedings, unless the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001). Additionally, a federal court may not address the merits of a claim contained in a habeas corpus petition unless the petitioner can show that he has exhausted his state remedies and avoided procedural default. 28 U.S.C. § 2254(b)(1)(A); *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). A petitioner exhausts his state remedies and avoids procedural default by presenting his claims fully and fairly to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

In this case, Rodriguez presented his claim that the trial court abused its discretion and violated his Sixth Amendment right

to counsel of choice to the Illinois appellate court. He then appealed the appellate court's decision to the Illinois Supreme Court, which refused to grant petitioner leave to appeal. Rodriguez has no other means by which to litigate this constitutional claim. Because his claim is not of a jurisdictional nature, state habeas corpus relief is unavailable to him. 735 ILL. COMP. STAT. 5/10-101 et seq. (West 2003). He may not file a petition for post-conviction relief because he is prohibited by principles of *res judicata* from raising constitutional issues that were litigated and rejected on direct appeal in a post-conviction petition. 725 ILL. COMP. STAT. 5/122-1 et seq. (West 2002); see also People v. Haynes, 737 N.E.2d 169, 184 (Ill. 2000). Rodriguez has exhausted his state remedies and the Court may accordingly address the merits of his claim.

### A. Merits

Rodriguez brings his claim under § 2254(d)(1) and contends that the appellate court's decision affirming Brent's disqualification was contrary to, or involved an unreasonable application of, federal law. In his reply brief, Rodriguez also contends that even if the appellate court did apply the correct legal standard, under § 2254(d)(2) it affirmed the trial court's decision to disqualify Brent on an unreasonable determination of the facts. The Court will not consider this argument, however, because it was raised for the first time in Rodriguez's reply

brief. *United States ex rel. Smith v. Page*, No. 96 C 3481, 1997 WL 61446, at *15 n. 10 (N.D. Ill. Feb. 6, 1997)

### 1. *Section 2254(d)(1) Claim*

A petitioner may only obtain habeas corpus relief under § 2254(d)(1) if he demonstrates that the decision handed down by the last state court to consider the claim, in this case the Illinois appellate court, is "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." § 2254(d)(1). The law applicable in this case is the standard for when a defendant's counsel of choice may be disqualified in light of a conflict of interest as set out in *Wheat v. United States*, 486 U.S. 153 (1988).

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. As the Supreme Court recognized in *Wheat*, the right "to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." 486 U.S. at 159; *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932)("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *United States v. Seale*, 461 F.2d 345, 358 (7th Cir. 1972)(the Sixth Amendment right to the assistance of counsel "certainly means that it is the actual choice of the defendant

which deserves consideration."). This right to be represented by counsel of one's choice must, of course, be balanced against the essential purpose of the Sixth Amendment, which is to ensure that each criminal defendant is provided with an effective advocate. *Wheat*, 486 U.S. at 159. Accordingly, there are limited situations in which the defendant's right to choose his own counsel may be restricted. *Id.* One such situation is when the counsel of choice is laboring under a conflict of interest. *Id.* at 159-60. In such cases, *Wheat* held that the presumption in favor of a defendant's choice of counsel may be overcome, but only by either: 1) a demonstration of actual conflict, or 2) by a showing of a "serious potential for conflict." Id. at 164.

In assessing the seriousness of the potential conflict, courts must consider all of the parties involved. "The decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case." *United States v. O'Malley*, 786 F.2d 786, 790 (7th Cir. 1986). Additionally, courts must evaluate the facts and circumstances, including any attempt by the Government to manufacture a conflict to prevent a defendant from obtaining particularly able counsel. *Wheat*, 486 U.S. at 163.

Rodriguez argues that the Illinois appellate court's affirmance of Judge Karnezis' ruling was contrary to and involved an unreasonable application of *Wheat*. In his view, the court

applied a looser standard, construing *Wheat* to mean that disqualification is permissible whenever a remote possibility of a conflict of interest is present. The Court disagrees with Rodriguez that the appellate court's decision was "contrary to" *Wheat*. A state court decision is "contrary to" clearly established law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. In its ruling, the appellate court correctly identified *Wheat* as the governing Supreme Court decision.

The Court does agree with Rodriguez, however, that the appellate court unreasonably applied the law set forth in *Wheat* to the facts of this case. A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. When undertaking this inquiry, a court should ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. As a result, a federal court may not grant relief merely because it concludes that the state court applied clearly established federal law erroneously or incorrectly but must also conclude that the state court's application was unreasonable. *Id.*

As the appellate court recognized, *Wheat* only permits a court to overcome the presumption in favor of petitioner's counsel of choice when there is a showing of either actual conflict or of serious potential for conflict. *Wheat*, 486 U.S. at 164. The appellate court, however, found that the trial court did not abuse its discretion in ordering Brent to withdraw based on this sole fact: McMurray had interviewed witnesses and co-defendants who implicated Rodriguez in the murder and therefore was a "*possible*" witness at Rodriguez's trial. It was objectively unreasonable for the appellate court to find that this possibility was sufficient to create a *serious* potential for conflict and to overcome the well-established presumption that, under the Sixth Amendment, Rodriguez has a right to counsel of his choice.

It is true that trial courts are given substantial latitude in ruling on conflicts of interest, given that such rulings often take place in the "murkier, pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162. This latitude extends to "the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. The appellate court, however, merely cited this latitude without exploring whether the relationships between the parties were indeed murky at the time Judge Karnezis made his ruling and whether such latitude was warranted in this case.

- 10 -

A review of the information that was available to Judge Karnezis at the time of his ruling demonstrates how unreasonable it was for the appellate court to have found the serious potential for conflict required by *Wheat*. Judge Karnezis based his decision to disqualify Brent on McMurray's police reports and on the State's assurances that McMurray would testify. First, however, it was clear from the police reports that while McMurray interviewed Rosado and alibi witnesses related to Rosado, he never interviewed Rodriguez. Second, the State had not included McMurray on its witness list in its answer to discovery. At the time it made its motion to have Brent disqualified, the State had acknowledged that its discovery was complete. Third, while Rosado and Rodriguez's cases had not yet been severed when Judge Karnezis ruled on this matter, they had implicated each other in the crime and it was possible that they would be tried separately.

In defending its position that McMurray would have served as a witness in Rodriguez's trial, the State argues that if Rosado and Rodriguez had been tried jointly, and if Rosado had testified against Rodriguez, the jury would have heard testimony from witnesses relating to Rosado, including McMurray. If McMurray had testified, the State theorizes, Brent would have had to have cross-examined him under the burden of a clear conflict of interest. In order to place McMurray as a witness at the trial and to bring him face to face with Brent, however, the State is forced to knit together a rather complex set of facts. The scenario it provides

relies on McMurray's involvement in the investigation of Rosado. Rosado told McMurray that he was with Nana and Demaris at the Darwin School lot at the time of the crime. McMurray then interviewed the two women and learned that they had not been with Rosado at that location. As a result, McMurray interviewed Rosado again, who then made incriminating statements and implicated Rodriguez in the murder. The State claims that if the two women had changed their stories to corroborate Rosado's initial account and had stated that they were at the Darwin School with him, Rosado's statements regarding his activities at the crime scene with Rodriguez would have been called into question. McMurray would then have been called to testify as a rebuttal witness to impeach the women's changed testimony, placing Brent (or his partner) in the position of having to cross-examine McMurray and to raise questions about his investigative skills.

This scenario does not work if the trials are severed, because Rosado would have to testify at Rodriguez's trial; his out of court statements implicating Rodriguez are inadmissible hearsay. It is unlikely that the State would call him unless his testimony was consistent with the police report and he implicated Rodriguez in the crime. In that case, there would be no need to call McMurray because there would be no changed testimony to rebut. Therefore, the scenario would only work if 1) Rosado and Rodriguez were tried together, and 2) the two women changed their stories and placed Rosado at the Darwin School lot. While at the time of Judge

Karnezis' ruling it was perhaps likely that the two defendants would have been tried jointly, there was no evidence to suggest that the women would change their stories and provide Rosado with an alibi. There was certainly no evidence strong enough to create a serious potential that McMurray would have to take the stand and be subject to cross-examination by Rodriguez's counsel.

Although the State described McMurray as an integral witness to the trial court when making its motion to disqualify Brent, the fact that the above scenario was highly unlikely to play out illustrates perhaps why McMurray's name was not even on the witness list. The State contends that McMurray was inadvertently omitted from the list because he had begun investigating the case after it began and claims that it had simply failed to update the Answer to Discovery. As Rodriguez points out, however, McMurray interviewed Rosado on June 24, 1995 and discovery did not close until February 15, 1996. If McMurray really was as integral to the State's case against Rodriguez as it averred, it had ample time to include his name on the witness list.

While the State may have been acting in good faith, and may have believed that McMurray would testify, courts are required by *Wheat* to evaluate the facts and circumstances, including any attempt by the Government to manufacture a conflict to prevent a defendant from obtaining particularly able counsel. *Wheat*, 486 U.S. at 163. In this case, however, Judge Karnezis heard no arguments from the parties on the disqualification motion. He did

not ask the State to explain how McMurray's testimony would be relevant or admissible and merely accepted its assurances that McMurray had become an "integral" part of the case against Rodriguez.

The Court is sympathetic to Judge Karnezis' desire to avoid any appearance of impropriety and to his sensitivity to problems that arise when an attorney is burdened by conflicts. However, the presumption that a defendant has the right to be represented by his preferred counsel under the Sixth Amendment is a critical one that courts may not take lightly. Ignoring what subsequently occurred in Rodriguez's case, namely that Rosado's and Rodriguez's trials were severed without objection from the State, and that McMurray did not testify in either trial, given what information was available to Judge Karnezis, it was still unreasonable for him to find a serious potential for conflict sufficient to overcome that presumption. It was accordingly unreasonable for the Illinois appellate court to find that the state court did not abuse its discretion in ordering Brent to withdraw.

The State contends that even if the appellate court did apply Wheat unreasonably in this case, the error is subject to harmless error analysis. While the Supreme Court has not definitively ruled on whether denial of defendant's counsel of choice requires a showing of prejudice for reversal, the law on this issue is guided in large part by the Court's decision in Flanagan v. United States, 465 U.S. 259 (1984). In Flanagan, the Court noted that: "to the

extent that an asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself . . . [o]btaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Id.* at 267-68. The Court also analogized the right to counsel of one's choice to the broader right to counsel and explained that "[n]o showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defendant is presumed." *Id.* at 268.

A year later, in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985), the Court confirmed that in *Flanagan* it had not decided the question of "whether prejudice is a prerequisite to reversal of a judgment following erroneous disqualification of counsel in . . . criminal cases." *Id.* at 438. The Court did state, however, that it had never held that prejudice *was* required for reversal in such cases. *Id.*

Like the Supreme Court, the Seventh Circuit has not yet reached this issue. In *United States v. Santos*, 201 F.3d 953 (7th Cir. 2000), it explained that in a prior opinion, *United States v. Turk*, 870 F.2d 1304 (7th Cir. 1989), it had stated that proof of prejudice is required when a defendant is complaining of a denial of her right to counsel of choice. *Santos*, 201 F.3d at 960. The Court went on to concede, however, that "[m]ost cases hold the

contrary" position and that *Flanagan* suggested that the right to counsel of one's choice was a structural error that was reversible *per se*. The Court also acknowledged that *Turk* had not discussed or even cited to *Flanagan*. *Id.* The Seventh Circuit did question whether cases since *Flanagan* had limited the rule of automatic reversal to cases of complete denial of the right to assistance of counsel. *Id.* Eventually, however, while the Seventh Circuit questioned the rationale for bringing the right to counsel of one's choice under that automatic reversal rule, it declined to decide the issue. *Id.* at 960-61.

Despite citing to *Santos*, a subsequent district court decision has categorized the right to counsel of choice as a structural error for which prejudice is presumed. *United States v. Chiapetta*, No. 99 CR 847, 2000 WL 1230454, at *3 (N.D. Ill. Aug. 23, 2000) (citing *Santos*, 203 F.3d at 959-60). Likewise, the majority of circuits that have reached the issue have held that a party need not demonstrate prejudice in seeking to obtain reversal due to an erroneous denial of a right to counsel of its choice. *See United States v. Panzardi Alvarez*, 816 F.2d 813, 818 (1st Cir. 1987); *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986); *Wilson v. Mintzes*, 761 F.2d 275, 285-86 (6th Cir. 1985); *Crandell v. Bunnell*, 144 F.3d 1213, 1216 (9th Cir. 1998), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000); *United States v. Childress*, 58 F.3d 693, 736 (D.C. Cir. 1995)(per

curium); cf. *United States v. Mendoza-Salgado*, 964 F.2d 993, 1016 (10th Cir. 1992)(explaining that automatic reversal is limited to cases where the trial court unreasonably or arbitrarily interfered with a defendant's right to counsel of choice); see generally *Johnstone v. Kelly*, 808 F.2d 214, 217 (2d Cir. 1986)(characterizing the language in *Flanagan*, 465 U.S. at 267-68, as strongly suggesting that denial of the Sixth Amendment right to self-representation can never be harmless error). Several of the Circuits, such as the First Circuit in *Panzardi Alvarez* and the Third Circuit in *Rankin*, relied directly on the language from *Flanagan* on this issue as support for their holdings.

In the absence of clear direction from the Seventh Circuit, the Court declines to depart from precedent set by the decisions cited above. Accordingly, Rodriguez need not demonstrate prejudice resulting from the state court's erroneous denial of his right to counsel of choice. Given the long-standing and widespread acceptance of the rule of automatic reversal, it can hardly be described as a new rule of law. Thus, contrary to the State's argument, it is not barred by *Teague v. Lane*, 489 U.S. 288 (1989), which prohibits retroactive application of a new rule of law to cases on collateral review.

As a final argument, Rodriguez contends that the trial court should have permitted him to waive any conflict of interest and to retain Brent. The Court need only address this briefly. It is worth noting that the trial and appellate courts incorrectly

weighed the probability that Rodriguez would bring an ineffective assistance of counsel claim had they accepted the proffered waiver. A waiver made knowingly and intelligently "bars any later claim of ineffective assistance growing from that conflict." *United States v. Lowry*, 971 F.2d 55, 63 (7th Cir. 1992). Section 2254(d)(1), however, restricts the source of "clearly established" law to Supreme Court jurisprudence. *Williams*, 529 U.S. at 412. Accordingly, the state courts' mistake does not constitute a separate reason for granting Rodriguez's petition.

## CONCLUSION

For the reasons set forth above, Rodriguez's petition for writ of habeas corpus is GRANTED. Petitioner Neftaly Rodriguez shall be released from custody on the conviction challenged in this action unless the State of Illinois commences proceedings to afford Rodriguez a new trial within one hundred and twenty days (120) of the date of this Order.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 24, 2003